IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CT-3056-FL

JAMES ANTHONY BARNETT, JR.,    )
    )
    Plaintiff,    )
    )
    v.    )    ORDER
    )
DR. CLIFFORD CURTIS,    )
    )
    Defendant.    )

This matter is before the court on defendant's motion for summary judgment (DE 30). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendant's motion.

**STATEMENT OF THE CASE**

On March 2, 2016, plaintiff, a state inmate, filed this civil rights action pro se pursuant to 42 U.S.C. § 1983, asserting a claim of deliberate indifference to his medical needs. (Complaint (DE 1)). On July 7, 2016, the court completed its frivolity review and ordered that the case proceed. (DE 13). On April 26, 2017, defendant filed the instant motion for summary judgment, including a memorandum in support of their motion, statement of material facts, and the following exhibits: affidavit of Dr. Clifford Curtis ("defendant"), movement log and movement records, and 93 sets medical records covering treatment received by plaintiff from February 18, 2015 to March 2, 2016 ("applicable time period"). Plaintiff filed a response in opposition on June 22, 2017.[1]

---

[1] Plaintiff has filed three other currently active § 1983 suits in this district against other defendants: 5:16-CT-3193-BO, 5:17-CT-3125-FL, and 5:17-CT-3205-D.

**STATEMENT OF THE FACTS**

The undisputed facts are as follows. Plaintiff is an inmate at Warren Correctional Institution ("Warren"). During the applicable time period, plaintiff was treated by defendant and by numerous other medical care providers at Warren, Rex Hospital, Maria Parham Emergency Room, Central Prison Urgent Care/Emergency Department, Granville Medical Center, and Central Prison Mental Health.[2]

Just prior to the applicable time period, medical care providers approved orders for defendant to receive prescriptions of oxycodone for management of pain associated with priaspism among other medications.[3] (Def.'s Aff. (DE 32-1) at 3-4). On February 6, 2015, defendant was transferred Rex Hospital and was diagnosed with a Tegretol overdose as a means to "get attention."[4] (Id. at 4). Physicians at Rex Hospital discontinued plaintiff's use of oxycodone, among other medications and no pain medication was prescribed at discharge. (Id. at 5-6).

During the applicable time period, plaintiff was treated at the following facilities, the following days, for the following reasons:

| 2/18/2015 | Maria Parham Emergency Department | Inability to urinate |
|---|---|---|
| 2/23/2015 | Central Prison Urgent Care/Emergency Department | Inability to urinate |
| 3/12/2015 | Maria Parham Emergency Department | Complications due to hunger strike |
| 3/17/2015 | Maria Parham Emergency Department | Inability to urinate |

---

[2] Defendant did not treat plaintiff at any facility other than Warren. (Def.'s Aff. (DE 32-1) at 2).

[3] Plaintiff had chronic stuttering priapism, which is an uncommon recurrent form of ischemic priapism consisting of unwanted, painful erections that typically last for less than three hours. (Def.'s Aff. (DE 32-1) at 3-4 n.3). Plaintiff's priapism resulted from abuse of cocaine. (Id.). Plaintiff underwent several surgeries in an attempt to correct his priapism, which resulted in an inability to void significant urine without catheterization. (Id.) As a result, plaintiff self-catheterizes to empty his bladder. (Id.)

[4] Tegretol is an anti-epileptic agent prescribed for plaintiff's seizure disorder. (Def.'s Aff. (DE 32-1) at 4).

| | | |
|---|---|---|
| 3/18/2015 | Maria Parham Emergency Department | Complications due to hunger strike |
| 3/19/2015 | Central Prison Urgent Care/Emergency Department | Complications due to hunger strike |
| 3/20/2015 | Central Prison Urgent Care/Emergency Department | Complications due to hunger strike |
| 3/20/15 – 3/27/15 | Central Prison Mental Health Admission | Complications due to hunger strike |
| 6/22/2015 | Granville Medical Center | Swallowing pills |
| 7/3/2015 | Maria Parham Emergency Department | Inability to urinate |
| 7/10/2015 | Maria Parham Emergency Department | Inability to urinate |
| 7/12/2015 | Central Prison Urgent Care/Emergency Department | Complications due to hunger strike |
| 7/12/15 – 8/4/15 | Central Prison Mental Health Admission | Complications due to hunger strike |
| 8/12/2015 | Maria Parham Emergency Department | Swallowing pills |
| 8/13/15 – 8/25/15 | Central Prison Mental Health Admission | Swallowing pills |
| 9/26/2015 | Maria Parham Emergency Department | Complications due to hunger strike |
| 9/27/15 – 9/29/15 | Central Prison Mental Health Admission | Complications due to hunger strike |
| 10/5/2015 | Maria Parham Emergency Department | Complications due to hunger strike |
| 10/7/15 – 11/4/15 | Central Prison Mental Health Admission | Complications due to hunger strike |
| 2/16/2013 | Maria Parham Emergency Department | Inability to urinate |
| 2/18/2016 | Maria Parham Emergency Department | Inability to urinate |
| 2/26/2016 | Maria Parham Emergency Department | Inability to urinate |

(Def.'s Aff. (DE 32-1) at 79-80; Exs. 4, 7, 13-18, 41, 44-45, 47, 51-53, 56-57, 67, 69, 74-77, 86, 89 and 95).

During this time, plaintiff was prescribed oxycodone or similar pain medications three times. In the first instance on February 25, 2015, defendant examined plaintiff upon his return to Warren from the emergency room after plaintiff had pulled out his catheter. (Def.'s Aff. (DE 32-1) at 8). In consideration of pain complaints, defendant ordered plaintiff a three-day prescription until a urology appointment could be completed. (Id. at 8-9). Following the urology appointment and the

urologist's recommendation that plaintiff's pain medication be discontinued, defendant determined plaintiff should not continue taking pain medication. (Id. at 8-11, 78-79).

In the second instance, plaintiff was prescribed oxycotone by Dr. Mineiro, but the prescription was discontinued by defendant on March 27, 2015, upon defendant's review of plaintiff's discharge chart from Central Prison Mental Health indicating manipulative behavior in order to receive pain medication. (Id. at 23-24, 79). In the third instance, upon discharge from Maria Parham Emergency Department on July 3, 2015, defendant was prescribed norco for five days by a medical care provider working in the emergency department. (Id. at 80). The on-call provider at Central Prison, P.A. Christopher ordered that the norco be discontinued because no pain prescriptions had been authorized due to defendant's recent overdose, because of plaintiff's history of manipulative behavior and malingering, and because of the lack of medical necessity for such a prescription. (Id. at 80-81).

**DISCUSSION**

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd.

v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

B.     Analysis

Plaintiff's claim, provided without evidentiary support or any detail in either plaintiff's complaint or response to defendant's motion for summary judgment, is that defendant in violation of plaintiff's Eighth Amendment rights refused to give plaintiff pain medication or honor the pain medication prescriptions written by other doctors for plaintiff's painful and chronic condition.

"In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (interior citation omitted). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious"–and the second prong is subjective–the prisoner must show that "subjectively the officials act[ed] with a sufficiently culpable state of mind." Id. at 1379 (internal quotations omitted). The second prong, deliberate indifference, "sets a particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). "[D]eliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994).

Defendant's 87-page affidavit discusses and incorporates 93 sets of medical records included as exhibits pertaining to treatment received by plaintiff during the applicable time period, which covers roughly a one-year time span. Defendant supplies in exhausting detail that during this time period plaintiff repeatedly employed manipulative behavior, including hunger strikes, overdoses of medications, removal of his catheter, refusal to undergo medical examinations, refusal to take medications, suicide threats, and suicide attempts in order to gain narcotics or psychotropic medications, transport to other facilities, or have his genitals manipulated by staff. Additionally, during this time period, plaintiff was sent to various hospital emergency rooms and health care facilities at least 22 times, twice by defendant for urinary retention and inability to catheterize himself. (Id. at 78, 83; Exs. 4, 7, 13-18, 41, 44-45, 47, 51-53, 56-57, 67, 69, 74-77, 86, 89 and 95). During the applicable time period, defendant personally examined plaintiff and performed chart reviews of plaintiff's medical records and/or test results on numerous occasions, including reviewing for medication adjustments. (Def.'s Aff. (DE 32-1) at 78, 85; Exs. 4, 7-8, 23-25, 29, 33, 37, 47-48, 61, 84, 92, 96).

There are only two incidents on the record where defendant prescribed and/or discontinued pain medication for plaintiff during the applicable time period. First, following an incident where plaintiff removed his catheter and could not self-catherize after, defendant sent plaintiff to the emergency room. (Def.'s Aff. (DE 32-1) at 8-11; Exs. 4 and 7). On February 25, 2015, following plaintiff's return to Warren, defendant examined and assessed plaintiff and prescribed him oxycodone when he initially complained of pain, ordering the prescription be given until plaintiff could be assessed by a urologist. (Id.; Exs. 7-8). Following said assessment in which the urologist

recommended a discontinuation of the pain medication, defendant discontinued plaintiff's prescription. (Id.; Exs. 7-8, 10)

Second, although plaintiff indicates otherwise, the record shows that plaintiff was not prescribed oxycodone or other pain medications by other providers during the applicable period with the exception of a five-day prescription for oxycodone by Dr. Mineiro on March 26, 2015. (Id. at 23; Exs. 2, 17, and 23).[5] In this instance, following a hunger strike, plaintiff was transferred from Warren to Central Prison on March 19, 2015, where he remained for roughly 8 days before being transferred back to Warren. (Id. at 16; Ex. 2 at 3). The day before being returned back to Warren, plaintiff was seen by a nurse for complaints of bladder fullness and pain. (Id. at 23; Exs. 2, 17, and 23). The nurse successfully inserted a catheter producing 450 mls of urine, indicating significant urinary retention. (Id.; Exs.17 and 23) The nurse reported plaintiff's condition by phone to a Dr. Mineiro, the on-call physician, who ordered a five-day supply of oxycodone. (Id.; Exs. 2, 17, and 23). Once plaintiff was returned to Warren the following day, defendant performed a routine review of his chart and discontinued the oxycodone prescription, noting that defendant's discharge summary indicated that 1) plaintiff refused to self-cathertize and would not do so until his bladder was full, requiring staff to insert catheter and 2) plaintiff did not show any sign of pain behavior except in the known presence of medical personnel. (Id. at 23-24; Exs. 23 and 24). Defendant discontinued the

---

[5] As stated above, only one other inapplicable exception occurred on July 3, 2015, when a hospital provider prescribed a 5-day prescription for norco which the on-call provider physician assistant Christopher, not defendant, determined to discontinue because no pain prescriptions had been authorized because of plaintiff's recent overdose, history of manipulative behavior, and lack of medical necessity. (Def.'s Aff. (DE 32-1) at 40; Exs. 41 and 44).

prescription and ordered plaintiff to undergo mental health counseling and self-catheterize as needed. (Id. at 24; Ex. 23 and 24).[6]

No where in the extensive record provided by defendant is there an indication that plaintiff's medical needs were ignored. The record reveals that defendant treated plaintiff each and every time plaintiff was referred to defendant for treatment.[7] Accordingly, plaintiff has failed to demonstrate a genuine issue of facts as to deliberate indifference to his medical needs. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (regarding medical care "disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.").

**CONCLUSION**

Based on the foregoing, defendant's motion for summary judgment (DE 30) is GRANTED. The clerk is DIRECTED to close the case.

SO ORDERED, this the 5th day of December, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[6] The record reveals that during the applicable time period, plaintiff received treatment in emergency rooms, at Central Prison, and when admitted to Central Prison Mental Health on the following days and was not prescribed oxycodone or any other pain medication: February 18, 2015, February 23, 2015, March 12, 2015, March 17, 2015, March 18, 2015, March 19, 2015, March 20, 2015, June 22, 2015, July 10, 2015, July 12, 2015, July 12, 2015 though August 4, 2015, August 12, 2015, August 13, 2015 through August 25, 2015, September 26, 2015, September 27, 2015 though September 29, 2015, October 5, 2015, October 7, 2015 through November 4, 2015, February 16, 2016, February 18, 2016, and February 26, 2016. (Def.'s Aff. (DE 32-1) at 79-80; Exs. 4, 7, 13-18, 41, 44-45, 47, 51-53, 56-57, 67, 69, 74-77, 86, 89 and 95).

[7] Because the court finds that plaintiff's claim fail on the merits, it is unnecessary to address defendant's qualified immunity and Eleventh Amendment bar to compensatory and punitive damages arguments, or address plaintiff's request for attorney's fees or that defendant's medical license be permanently suspended and defendant be enjoined from unprofessional acts.